UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>KIMBERLY RACHELLE VAUGHN and<br>JOHN WAYNE REAMS,<br><br>  Defendants. | Criminal No. 12-29-ART-(1),(2)<br><br>**MEMORANDUM OPINION<br>& ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Kimberly Vaughn pled guilty to two counts charging a conspiracy to manufacture and distribute over fifty grams of a mixture containing methamphetamine. R. 41. She and her co-conspirators procured 121.48 grams of pseudoephedrine, a precursor chemical to methamphetamine, to produce an unknown quantity of methamphetamine. At her sentencing hearing, Vaughn objected to the calculation of her base offense level in her Presentence Investigation Report ("PSR"). The Court promised the parties a written ruling on her objection, R. 70, and provides that ruling here.

To calculate Vaughn's base offense level, the PSR used the quantity of pseudoephedrine purchased by Vaughn and her co-conspirators. *See* U.S.S.G. § 2D1.1 cmt. n.8(A) (directing the Court to the Drug Equivalency Tables in Section 2D1.1's application notes for controlled substances not listed in Section 2D1.1(c)'s Drug Quantity Table), (D) (providing a conversion rate for pseudoephedrine to marijuana in the Drug Equivalency Tables). The PSR converted the quantity of pseudoephedrine to its equivalent quantity of marijuana at the rate of one gram pseudoephedrine to ten kilograms marijuana—or, in this

case, 121.48 grams pseudoephedrine to 1,214.80 kilograms marijuana. *See id.* § 2D1.1 cmt. n.8(D). Using Section 2D1.1(c)'s Drug Quantity Table, the PSR then determined a base offense level of 32 for Vaughn.

Vaughn suggests that the PSR's approach leads to absurd results: assuming that one gram of pseudoephedrine results in one gram of a mixture containing methamphetamine—an assumption endorsed by the United States—the penalty for possessing pseudoephedrine is greater than the penalty for possessing an equivalent quantity of a methamphetamine mixture. *Compare id.* § 2D1.1(c)(7) (equating 50–200 grams of a methamphetamine mixture to 100–400 kilograms marijuana), *with id.* § 2D1.1 cmt. n.8(D) (converting 121.48 grams pseudoephedrine to 1,214.80 kilograms marijuana). Vaughn therefore believes that the Court should base her sentence on 121.48 grams of methamphetamine mixture rather than on the same quantity of pseudoephedrine.

The Sentencing Guidelines and Sixth Circuit precedent foreclose this clever argument. In this case, while everyone agrees on the total quantity of pseudoephedrine the conspiracy purchased, no one knows precisely how much methamphetamine the conspiracy produced. The Guidelines instruct courts what to do when this happens, and under the Guidelines the PSR's calculation of Vaughn's base offense level is correct.

Until 2000, district courts did something akin to what Vaughn suggests. Instead of converting pseudoephedrine directly to its marijuana equivalent, courts relied on expert testimony to approximate the amount of methamphetamine that each defendant convicted of a manufacture-related offense could produce from pseudoephedrine. *See United States v. Martin*, 438 F.3d 621, 625 (6th Cir. 2006). The estimated conversion ratio used by courts was therefore tailored to individual circumstances instead of uniform across all defendants.

2

*See id.* at 626 (citing *United States v. Hamilton*, 81 F.3d 652, 654 (6th Cir. 1996)).  Congress changed this practice in 2000 by mandating that the United States Sentencing Commission establish a single conversion ratio for use by all district courts.  *Id.* at 624–25.  The Commission promulgated a 50% conversion ratio for pseudoephedrine, such that two grams of pseudoephedrine equate to one gram of pure methamphetamine.  *Id.* at 625.  In other words, one gram of pseudoephedrine has a marijuana equivalent of ten kilograms, while one gram of pure methamphetamine has a marijuana equivalent of twenty kilograms.  *Id.*  Given that a methamphetamine laboratory's yield rate can vary from as low as 15% to as high as 85%, the Commission staked out a reasonable middle ground in response to Congress's command.  *Id.* at 636.

Since that time, courts have calculated base sentences for defendants convicted of manufacture-related offenses by applying this conversion ratio to the pseudoephedrine attributable to those defendants.  This is how the sentencing court calculated the defendant's sentence in *Martin*, for example.  *Id.* at 624.  Similarly, in *United States v. Bargo*, 482 F. App'x 78 (6th Cir. 2012), a jury convicted the defendant of possession of pseudoephedrine and attempt to manufacture 50 grams or more of methamphetamine.  *Id.* at 80.  At trial, an expert witness had testified about the defendant's approximate yield rate in his methamphetamine laboratory.  *Id.* at 79–80.  When calculating the defendant's Guideline range for his attempt count, the sentencing court used that yield rate to convert the quantity of pseudoephedrine attributed to the defendant to methamphetamine.  *Id.* at 80.  The court then converted that quantity of methamphetamine to its marijuana equivalent and determined the defendant's offense level using Section 2D1.1(c)'s Drug Quantity Table.  *Id.*  The Sixth Circuit held that the sentencing court should not have performed this sequence of

conversions rather than directly converting the amount of pseudoephedrine to its marijuana equivalent. *Id.*; *see also United States v. Crabtree*, 479 F. App'x 730, 731 (6th Cir. 2012) (holding that, for a defendant convicted of conspiracy to manufacture methamphetamine, a district court correctly calculated the base offense level by converting the amount of pseudoephedrine to its marijuana equivalent).

Even setting this precedent aside for the moment, Vaughn's proposed procedure for calculating her base offense level creates more problems than it solves. If the Court implemented her procedure, the Court would first have to find by a preponderance of the evidence how much methamphetamine mixture the conspiracy produced. Let's say Vaughn and her co-conspirators actually produced one gram of methamphetamine mixture per gram of pseudoephedrine. The Court would next have to find the weight of the actual controlled substance (methamphetamine) contained in the methamphetamine mixture. Then the Court would have to determine which offense level—for the total weight of the methamphetamine mixture or for the weight of the methamphetamine alone—was greater. The greater level would become Vaughn's offense level. *See* U.S.S.G. § 2D1.1(c), Notes to Drug Quantity Table, Note B ("In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater."). In other words, there is no guarantee that using Vaughn's proposed procedure would result in a lower base offense level. And, her procedure would force the Court and parties to engage in evidence gathering and speculation not required by use of the Guidelines conversion ratio for a known quantity of pseudoephedrine. This sort of uncertainty is precisely what

4

Congress instructed the Sentencing Commission to eliminate. *See Martin*, 438 F.3d at 624–25.

Accordingly, it is **ORDERED** that Vaughn's objection to the base offense level calculated by the PSR is **OVERRULED**.

This the 18th day of September, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge

5