UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:12-CR-29-GFVT-HAI-1 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| KIMBERLY RACHELLE VAUGHN, ) | |
| ) | |
| Defendant. ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 140), the Court considers reported violations of supervised release conditions by Defendant Kimberly Vaughn Crawford.

Then-District Judge Amul Thapar entered Judgment against Defendant in November 2013 for one count of conspiracy to manufacture 50 grams or more of a methamphetamine mixture and one count of conspiracy to distribute 50 grams or more of a methamphetamine mixture. D.E. 81. Defendant was sentenced to 120 months of imprisonment followed by lifetime supervised release (with an option for re-evaluation after ten years). *Id*. Defendant was released on January 4, 2019.

**I.**

On July 21, 2023, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges five violations.

Over the summer, Defendant had a series of contacts with law enforcement. First, on May 23, 2023, Defendant was arrested and charged with (1) first-degree trafficking of less than two grams of meth, first offense; (2) heroin trafficking, first offense; (3) third-degree trafficking

in an unspecified controlled substance, first-offense; and (4) trafficking in less than 8 ounces of marijuana, first offense. This is Whitley District Court matter 23-F-00160.

Second, on May 29, Defendant was arrested and charged with (1) receiving stolen property valued between $1,000 and $10,000; (2) first-degree trafficking of more than two grams of methamphetamine, second offense; and (3) being a convicted felon in possession of a handgun. This is Whitley District Court matter 23-F-00157.

Both of these matters went to the grand jury, which issued an indictment on May 30, 2023, in Whitley Circuit matter 23-CR-00214. The indictment includes the following four charges: (1) first-degree trafficking of less than two grams of methamphetamine, first offense; (2) heroin trafficking, first offense; (3) trafficking in less than 8 ounces of marijuana, first offense; and (4) receiving stolen property valued at more than $10,000. Accordingly, the four indicted charges are fewer than, and somewhat different from, the original seven charges stemming from the two arrests in May.

As explained to the Court by the probation officer, Defendant was on minimal supervision during this time because she had been compliant for so long. Because Probation was not routinely checking her arrest record, they were not aware of the May arrests until July.

The Report provides the following background:

> On May 20, 2023, a search warrant was conducted by the Corbin Police Department based on intel that drug trafficking was taking place at the residence of Kimberly Vaughn (Crawford) . . . . Approximately 4 ounces of methamphetamine, 1 vial of heroin, 4-5 ounces of marijuana, multiple assorted prescription narcotic medications, and several calibers of ammunition were located. No arrests were made at that time due to the home being unoccupied at the time of the search. An arrest warrant was subsequently issued . . . .
>
> On May 29, 2023, at around 1:00 a.m., Vaughn was located and arrested by Corbin Police pursuant to the above referenced complaint warrant. According to the arrest citation, [police] observed a red GMC Acadia that matched the

description of the vehicle Vaughn was known to drive pulling onto [Vaughn's street], then signaling to pull into Vaughn's driveway. A traffic stop was initiated, and Vaughn was identified as the driver. Vaughn granted permission to search the vehicle. During the search, a small clear jar containing a crystal-like substance believed to methamphetamine was located in Vaughn's purse, and a loaded 9mm semi-automatic handgun was located in the rear center floorboard of the car. . . .

Following the arrest, and on the same date around 9:00 a.m., according to the written complaint, Vaughn's son . . . reported to the Corbin Police Department that items had been stolen from him, one of which was tracked with an apple air tag to the Corbin Police Department. Kenneth Vaughn was able to identify a Klimaire air conditioner/heater that matched one in the seized vehicle driven by Vaughn during her arrest earlier that day. The property was valued at $1,000 and was returned to the owner. . . . On June 15, 2023, Vaughn posted bail and was released from custody.

**Violation #1** lists the seven original charges from the two May arrests and charges a violation of the condition that prohibits commission of another federal, state, or local crime. Because the charges include drug-trafficking felonies, Violation #1 is a Grade-A violation. *See* USSG §§ 4B1.2(b) (defining "controlled substance offense"), 7B1.1(a)(1) (a felony controlled-substance offense is a Grade A violation).

**Violation #2** charges a violation of the condition that Defendant must not unlawfully possess a controlled substance. The is a Grade B violation because Defendant's possession of methamphetamine (along with heroin, marijuana, and prescription narcotics), on account of her prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Based on the handgun found in her vehicle and the ammunition found in her residence, **Violation #3** charges a Grade C violation of the condition that prohibits possession of a firearm.

**Violation #4** charges a Grade C violation of the condition that requires Defendant to report any contact with law enforcement to her probation officer within 72 hours. Even though Defendant was released following her state charges, she did not report her arrests to Probation.

**Violation #5** charges a Grade C violation of the condition that Defendant "shall not frequent places where controlled substances are illegally sold, used, distributed, or administered." According to the Report:

> Vaughn has reported living at [a certain residence in Corbin]. Corbin Police have established intel that this address is being used to traffic controlled substances and have observed drug related activity at this address through surveillance. Based on their investigation, a search warrant was issued and executed at this residence and several controlled substances were seized that were indicative of drug trafficking.

On August 1, 2023, Defendant was arrested by the Marshals Service on this Court's supervised-release-violation warrant. She was found in possession of suspected methamphetamine and drug paraphernalia. She was given state charges of possessing drug paraphernalia and first-degree methamphetamine possession, third or greater offense. This is Whitley District Court matter 23-F-50100. The public e-Courts docket reflects no hearings currently scheduled in this case.

Also on August 1, the USPO issued an Addendum to the Report, which alleged a sixth violation. Based on the circumstances of the August 1 arrest, **Violation #6** charges a Grade C violation of the condition prohibiting unlawful controlled-substance possession and the condition prohibiting commission of a crime.

The Court conducted an initial appearance pursuant to Rule 32.1 on August 2, 2023. D.E. 141. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not request release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on September 18, 2023, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 146. Defendant competently entered a knowing, voluntary, and intelligent stipulation. *Id*. Defendant's stipulation was limited to include only the felony-drug-trafficking portion of Violation #1, specifically **distribution of methamphetamine**. The government moved to dismiss all five other violations and to dismiss all portions of Violation #1 aside from the admitted felony drug trafficking (controlled substance offense). For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the felony-trafficking aspect of Violation #1, which is a Grade A violation. The United States thus established the felony methamphetamine trafficking component of Violation #1 under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to two Class A felonies—both of which involved 50 grams or more of a methamphetamine mixture, enhanced by a prior conviction for first-degree controlled-substance possession (D.E. 6). *See* 21 U.S.C. § 846. Such a conviction carries a five-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F.

5

App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade A. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District), the fact she was on supervision for a Class A felony, and Grade A violation, Defendant's range, under the Revocation Table of Chapter Seven, is 51 to 63 months. USSG § 7B1.4(a). Due to the five-year statutory cap mentioned above, her effective Range is **51 to 60 months**.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, both parties recommended penalties below the Guidelines Range. The government argued for 42 months of incarceration, with two years of supervision to follow. The defense requested 24 months of incarceration and two years of supervised release. The defense requested that Defendant be housed at FMC Lexington to be closer to her family.

According to the government, Defendant was a "model supervisee" for three and a half years. But then she suddenly fell off a cliff into a period of "aggravated conduct" including repeated drug trafficking.

Nevertheless, the government pointed to a pair of "extenuating circumstances." The first is that Defendant was acting under the influence of her husband, Tester Crawford. He was "more culpable" and was directing Defendant's participation in the drug trafficking.

The second unusual circumstance had to do with the passage of the First Step Act following Defendant's conviction. Under the First Step Act, drug *possession* offenses no longer

qualify as aggravators under 21 U.S.C. § 851.  Had Defendant been sentenced under the First Step Act, then her federal meth trafficking felonies would have been Grade B rather than Grade A.  Had Defendant been sentenced under the First Step Act, then on this revocation matter **her Guidelines Range would be 33-41 months rather than 51-60**.  Further, the underlying conviction would have been a Class B felony, yielding a three-year cap on any revocation sentence.  This means her effective Guidelines Range on this revocation, had she been sentenced after the First Step Act, would be **33 to 36 months**.  Defendant would still have a criminal history category of VI.  She would still have 18 criminal history points.  But her criminal history prior to the underlying federal case included no drug *trafficking* offenses and no crimes of violence.  Thus, her sentencing-enhancement notice under § 851 would not have applied today.

The government said this case is unique in that there was a long and "commendable period of compliance" followed by three separate incidents of trafficking.  But the government viewed the violation circumstances as "one big set" of violation conduct.  The government stressed that Defendant's trafficking was not motivated by a desire for profit.  Defendant is a drug abuser herself and she was influenced to participate by her husband.  Her addiction, plus that "undue influence," caused the trafficking.

According to the government, its recommended 42-month sentence is nine months below the actual Range and six months above the Range had she been sentenced under the First Step Act.  The government noted that Defendant's underlying sentence was 31 months below her Guidelines Range.  But, according to the government, Judge Thapar occasionally would impose a below-Guidelines sentence and balance it out with lifetime supervision.  The government did not ask that the revocation sentence account for the fact that the underlying sentence was below the Range.  As for further supervision, the government noted that Defendant had shown she can

7

be successful. Accordingly, the government considered two years of supervision to be adequate to protect the public and deter additional criminal conduct.

Defense counsel said he had no reason to disagree with the government's presentation, but evaluated the factors differently. The defense mostly provided additional context. Defendant met Tester Crawford while they were both at a halfway house. Defendant requested, and received, permission from the USPO to be involved with and marry him. She now "regrets" that decision "for a lot of reasons." For about three years, both were good supervisees. They worked and together they bought a house and vehicles. But Tester quit working and returned to using meth. He shared it with Defendant and got back into trafficking to finance his addiction. After returning to drug use, Tester also got violent with Defendant, including putting a gun to her head at one point. At the urging of her family, Defendant left Tester and obtained a domestic-violence protection order against him. That order was obtained on June 12, 2023, and Defendant also hired a lawyer to initiate divorce proceedings. Defendant continued working for a while. She had a job as office manager, and her supervisor reported Defendant was wonderful to work with.

The defense also recognized the presence at the hearing of Defendant's brother and sister and her son. Defendant also has a teenage son and grandchildren whom she wants to be with.

According to the Defense, Tester Crawford's son also moved into their house at some point. He brought drugs and firearms with him. There is a warrant for the son's arrest, but he has not been taken into custody.

Neither side requested the imposition of new release conditions. The defense said Defendant could benefit from mental health treatment. The existing conditions provide this

possibility. The defense believed Judge Thapar's decision to impose lifetime supervision was based on Defendant's long history of substance abuse.

Defendant addressed the Court. She said she believed 24 months is enough. She is eager to return to work and to her family. Defendant said that she had achieved self-love and self-respect after her release. But she succumbed to temptation and instead found shame and guilt. She said more counseling and rehabilitation would help her.

**IV.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

The presence of a Grade A violation means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violation. Neither side argued for a non-revocation penalty.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Here, Defendant was involved in a conspiracy to manufacture and distribute drugs. That she returned to trafficking shows she always poses something of a risk of relapsing into harmful behavior.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant has a criminal history category of VI, which drives her high Guidelines Range. Defendant's history suggests he has the potential to pose a risk of danger to the public. Her first crimes occurred 30 years ago, and her many contacts with

the criminal justice system have not provoked permanent change. However, Defendant succeeded on supervision for three and a half years. By all accounts, she was doing very well and was minimally supervised. Further, her return to drug trafficking was done at the behest of her abusive husband, which lessens her culpability. Defendant poses a danger to the public when she comes under the influence of dangerous men. And her resistance is weakened by her drug addiction. A significant sentence is needed to provide time for deterrence and protection of the public.

Another aspect of Defendant's history is that her underlying sentence would have been quite different if imposed today. It is fair under these circumstances to consider the hypothetical post-First-Step-Act revocation Guidelines Range of 33-41 months as an appropriate frame. The Guidelines are an attempt to create uniformity in sentencing. To apply Guidelines based on her pre-First-Step-Act sentence would create disparities with similarly situated Defendants who happened to have been sentenced later in time.

Another factor focuses on opportunities for education and treatment. Defendant has received drug addiction treatment in the past. She can be re-evaluated for drug-addiction and mental-health treatment upon release.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant's

breach of trust is aggravated by her serious drug-trafficking conduct. And she was given extra trust by Probation when she was under minimal supervision. On the other hand, she had an unusually long period of success on supervision before falling off the proverbial cliff into criminal behavior.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, both sides agree that Defendant's Rage, driven by her criminal history, is high in relation to the severity of her violation.[1] Further, had she been sentenced today, she would face a Range of 33-41 months (with a 36-month statutory cap) rather than 51-60 months. Both sides agree that a downward departure is warranted largely on account of (1) this disparity created by passage of the First Step Act, which was designed to produce more equitable sentences, and (2) the undue influence exerted by Tester Crawford on Defendant's return to drug use and trafficking.

The Court finds that a revocation sentence of 36 months is sufficient, but not greater than necessary, to address the relevant sentencing factors. That sentence is the minimum sentence that adequately addresses the pertinent sentencing factors. Any lesser penalty would not

---

[1] The Court has also thoroughly considered the matters presented during the sealed portion of the hearing.

11

sufficiently reflect the breach of trust and the need for deterrence and protection. The Court also agrees that a two-year supervision period is adequate to ensure Defendant begins the next phase of her life on a good start.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon her stipulation, Defendant be found guilty of one portion of Violation #1, specifically that she committed the Grade A violation of felony methamphetamine trafficking.

2. That, upon the government's motion, Violations #2 through #6 be dismissed. Further, the portions of Violation #1 aside from the admission to committing first-degree methamphetamine trafficking be dismissed on the government's motion.

3. Revocation with a term of imprisonment of 36 months, followed by 24 months of supervised release on the conditions previously imposed.

4. That, if possible, Defendant be placed in FMC Lexington to be closer to family.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Judge. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk.

Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 25th day of September, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge